IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEON BENSON and <br> KOLLEEN BUNCH, <br><br> Plaintiff(s), <br><br> v. <br><br> CITY OF INDIANAPOLIS, et al., <br><br> Defendants. | Case No. 24-cv-00839 <br><br> HON. JAMES PATRICK HANLON <br> HON. MAG. MARK J. DINSMORE <br><br> **JURY TRIAL DEMANDED** |

### PLAINTIFFS' RESPONSE TO DEFENDANT JONES MOTION FOR A PROTECTIVE ORDER

NOW COMES Plaintiffs, LEON BENSON AND KOLLEEN BUNCH, by their attorneys LOEVY & LOEVY and BNK LAW GROUP, and respectfully file this Response to Defendant Jones Motion for a Protective Order. Dckt. 141. In support, Plaintiffs state as follows:

### Introduction

Plaintiff Leon Benson was wrongfully convicted of the 1998 murder of Kasey Schoen. Dckt. 1. Defendant Jones was the lead investigator of the Schoen homicide. During the underlying investigation, Defendant Jones obtained exculpatory evidence pointing to Joseph "Looney" Webster as the actual shooter. Dckt. 1. In 2022, Defendant Jones was interviewed by the Marion County Prosecutor's Office CIU and staff attorneys and an investigator working for a clinical program at the University of San Francisco who were representing Plaintiff regarding his wrongful conviction. Nearly six-hours of audio-recordings exist from those interviews. At the conclusion of the second round of interviews, after reviewing the homicide file, Defendant Jones signed a declaration admitting to withholding exculpatory evidence that implicated Webster in

the murder. Dckt. 1. This misconduct was extensively outlined in Plaintiffs' Complaint and has been a major focus of the parties' discovery efforts over the last year.

At first blush, Defendant Jones' motion may appear to focus on his current capacity to be deposed and/or subjected to written discovery responses. But it's not. At its core, Defendant Jones counsel is attempting to conjure up a new defense by trying to back date to 2022 what they now claim is Jones' current compromised mental status. In other words, Defendant Jones counsel is using records documenting his current condition to argue, in the face of six hours of recorded interviews to the contrary, that Defendant Jones signed declaration is invalid because of mental incapacity.

Counsel for Defendant Jones currently seeks an incapacity finding from this Court shielding Defendant Jones from testifying and responding to written discovery. But the true intention behind this position is clear from what happened on the final day of discovery—more than 18 months after the filing of the complaint. At the eleventh hour, his counsel disclosed new witness(es) who purportedly have knowledge as to how Defendant Jones was supposedly incapacitated in 2022 when he gave his declaration where he admitted to violating Plaintiff's constitutional rights. The Court should look upon this cynical gamesmanship with the skepticism that is deserves.

As explained below, Defendant Jones' counsel's untimely disclosures are either: (1) irrelevant as objective evidence illustrates Defendant Jones had capacity in 2022 and throughout much of this litigation; or (2) inexcusable due to the negligence of counsel in identifying this defense earlier in the litigation. In short, Defendant Jones should not be able to manufacture an incapacity defense from 2022 after the closure of fact discovery.

2

**Legal Standard**

Under Fed. R. Evid. 601, "[e]very person is competent to be a witness unless these rules provide otherwise."[1] The standards for determining witness competency under federal and Indiana law are materially identical: they focus on whether the witness knows the difference between the truth and a lie, knows that he is required to tell the truth, and "knows what a true statement actually is." *See, e.g., Kien v. State,* 866 N.E.2d 377, 385 (Ind. Ct. App. 2007). Further, Fed. R. Civ. P. 26(c), authorizes the Court to issue a protective order to shield a party from oppression or undue burden, including forbidding a deposition, barring a discovery method, or forbidding and/or limiting inquiry into certain matters. This Court has broad discretion under Rule 26(c) to "decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

**Argument**

**I.     Plaintiffs' Position Regarding Defendant Jones Current Capacity**

Under Fed. R. Evid. 601, "[e]very person is competent to be a witness unless these rules provide otherwise." Indeed, every witness is presumed competent to testify unless it can be shown that the witness does not have personal knowledge of the matters about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully. *United States v. Gutman,* 725 F.2d 417, 424 (7th Cir.1984); see also *Credentials Plus, LLC v. Calderone*, 230 F. Supp. 2d 890, 904 (N.D. Ind. 2002). The Seventh Circuit has long held that so "long as a witness has the capacity to testify truthfully, it is best left to the fact-finder to determine whether he in fact did so.") *United States v. Snyder,* 189 F.3d 640, 645 (7th Cir. 1999).

3

Following Fed. R. Evid. 601, this Court "has the power, and in an appropriate case the duty, to hold a hearing to determine whether a witness should not be allowed to testify because [a mental infirmity] has made him incapable of testifying in a competent fashion." *United States v. Gutman,* 725 F.2d 417, 420 (7th Cir. 1984). On this front, while Defendant Jones currently suffers from dementia, the Seventh Circuit has cautioned that it is a "common mistake to exaggerate the degree to which senile dementia renders an individual mentally incompetent" and that, prior to its terminal stage, "the severity of the dementia varies from day to day, even from hour to hour." *Boyce v. Fernandes,* 77 F.3d 946, 949 (7th Cir.1996). In *Bonds v. Fizer*, for example, the Court found that the moving party, "point[ed] to nothing establishing that people with a history of dementia are untrustworthy as a matter of law." 713 F. Supp. 2d 752, 763 (N.D. Ill. 2010). Courts in this district have denied a motion to declare a party incapacitated in similar circumstances.

While the circumstances presented here are certainly sad regarding Defendant Jones current mental state, he has not definitively proven that his current mental capacity justifies the relief sought. In a case with analogous circumstances—a physician determined the plaintiff was not "competent as a witness," possessed a "moderate intellectual disability," and had the "mental capacity of a six-year-old"—another court in this district declined to declare the party incapacitated. *E. C. by Next Friends Mario C. v. Cmty. Sch. Corp. of E. Hancock Cnty.,* No. 119-CV-03563-JPH-DML, 2020 WL 9762940, at *1–2 (S.D. Ind. Nov. 30, 2020). In rejecting the motion, Judge Lynch found that the physicians' opinions "are factors that go to the weight of E.C.'s testimony, but are insufficient on their own to establish incompetency." *Id*. What is critical is that the individual "knows the difference between a truth and a lie, will be able to understand that she is required to tell the truth, and knows what a true statement is." *Id*.

In *E. C. by Next Friends*, the Court found that "[t]here is no showing that E.C. lacks any capacity to recall or is not capable of testifying in any meaningful fashion whatsoever." *See also United States v. Banks,* 520 F.2d 627, 630 (7th Cir. 1975) (rejecting argument that because witnesses were under the influence of drugs they were not competent to testify); *Casselman v. State,* 582 N.E.2d 432, 435 (Ind. Ct. App. 1991) ("To be qualified to testify, a child need not be a model witness, have an infallible memory, or refrain from making inconsistent statements."). But in making this finding, the court noted that there are safeguards that can be in place to permit such testimony while also protecting the party at issue. For instance:

> 4. It behooves any questioner of E.C. to understand her cognitive limitations and to ask questions using simple phraseology, syntax, and vocabulary, as discussed by Dr. Berger.
>
> 5. The court does not preclude E.C. from arguing that, for purposes of dispositive motions or trial, specific testimony from a deposition should not be considered sufficiently trustworthy (because, for example, questions used language or syntax such that E.C. very likely did not understand them), but there is no persuasive showing that she lacks competence as a witness.

*E. C. by Next Friends Mario C. v. Cmty. Sch. Corp. of E. Hancock Cnty.,* No. 119CV03563JPHDML, 2020 WL 9762940, at *1–2 (S.D. Ind. Nov. 30, 2020). The same safeguards could be employed here.

[redacted]

In short, based on this record, Plaintiffs believe that further inquiry is warranted, or that if a finding is made, that it is specific and fixed in time. Plaintiff takes no position as to the specific mode of that inquiry or finding but suggests that this Court either: (1) hold an evidentiary hearing where Defendant Jones testifies; or (2) order Defendant Jones to respond to written discovery and/or sit for a deposition; or (3) make a fixed and specific finding that Defendant Jones lost sufficient capacity to participate as of September 2025.

**II.    Plaintiffs Oppose Defendant Jones Forming New Defense Through Untimely Disclosures on Last Day of Discovery**

Defendant Jones' counsel does not stop with *just* seeking a protective order at the eleventh hour. Instead, on the last day of discovery, Defendant Jones' counsel tendered supplemental Rule 26(a)(1) disclosures illustrating that he intends to form a new defense: that Defendant Jones was incapacitated at the time of his 2022 declaration and recorded interviews. This attempt to back-door purported evidence that should have been disclosed and vetted immediately after the filing of the complaint and certainly during the taking of fact depositions should be barred. Ex. 4, Jones 10.31.25 Disclosures at 4.[1]  The unjustifiably late disclosed

---

[1] As explained below, under the timeline proffered by counsel for Defendant Jones, they were on notice as late as September 2025 as to the potential capacity issues and were in contact with Jones' family.  This isn't a theory developed in the final week of discovery nor a witness discovered at the late stage.  According to Defendant Jones' disclosures, both Stephen M. Jones and Andy Jones can only be contacted through Jones' counsel. Ex. 4, 10/31/25 Disc. at 4.

witnesses and evidence should be barred because they are: 1) untimely and irrelevant as objective evidence demonstrates that Defendant Jones was cognitively functioning in 2022; or (2) untimely and the result of Defendant Jones' counsel not exercising due diligence discovering the purported capacity prior in the litigation—or worse, engaging in gamesmanship that this Court should disallow. The disclosures of such new witnesses and evidence is not only devoid of justification, it severely prejudices Plaintiffs from challenging allegations of incapacity through discovery. It must be barred.

    **A. Crediting Counsel's Representations to the Court, Objective Evidence Illustrates that Defendant Jones Suffered No Capacity Issues Until Recently, Rendering Untimely Disclosures Irrelevant**

This new evidence should also be barred because it is at odds with positions that Defendant Jones' counsel has staked out before this Court.



---

Unlike a true third-party witness, these are relatives of Defendant Jones who is counsel apparently represents and has control over.
[2] To the extent this is true, counsel has arguably become a witness as to Defendant Jones capacity throughout the first few years of this litigation.

Ample evidence supports counsel's representations to the Court that Defendant Jones was competent throughout most of this litigation. On September 12, 2024, Defendant Jones produced his initial disclosures. Ex. 2, Initial Disclosures. Nearly three months later, on December 4, 2024, Defendant Jones filed an Amended Answer to Plaintiffs' Complaint. Dckt. 75. Defendant Jones answered each of the 281 paragraphs in the Complaint. Dckt. 75 at pgs. 68-73. He also affirmatively pled twenty-one affirmative defenses, none of which involved his capacity. Id. at 69-73. It is inconceivable as to how Defendant Jones could have been incapacitated at the time the disclosures were made and the Complaint answered, all while his experienced counsel was unaware of such incapacity.

But Defendant Jones not only produced initial disclosures and answered the Complaint, he also responded to Plaintiffs' interrogatories. While Defendant Jones' counsel made a flurry of objections, Defendant Jones also answered specific questions. First, Defendant Jones revealed whether any Complaints were made against him while at the Department. Ex. 3, Inters at pg. 6. And, when asked to identify every communication regarding Plaintiff or the Individual Defendants, Defendant Jones divulged information regarding his 2022 interviews and declaration:

> privileges. Defendant Jones also objects to this interrogatory's request to be specifically answered under oath because unsworn declarations or verifications under penalty of perjury are permitted with like force and effect pursuant to 28 U.S.C. §1746. Subject to and without waiving these objections, limiting his response to non-privilege communication related to the Kasey Schoen investigation, to the best of his knowledge and ability to recall, he discussed the investigation into the murder of Kasey Schoen and the general allegations that would, unbeknownst to him, eventually be made against him, with Lara Bazelon, two other female attorneys and another male in approximately 2022. The attorneys and the investigator came to his residence and asked him questions about the investigation into the murder of Kasey Schoen. Additionally, Defendant Jones communicated with witnesses, other detectives, supervisors and prosecutors with regard to the Kasey Schoen investigation. Furthermore, Defendant Jones refers Plaintiff to the records exchanged between the parties pursuant to FED. R. CIV. P. 26(a)(1), as well as the materials exchanged in discovery, and gathered from third parties which identifies or indicates any such communications Defendant Jones may have had related to the Kasey Schoen Investigation. Investigation continues.

Id. at 7.

Nowhere did Defendant Jones divulge that he had memory issues stemming from a 2018 stroke nor capacity issues that would provide a defense that he was incapacitated at the time of the 2022 declaration. Id. at 7.

When asked whether Defendant Jones complied with the policies, customs, or practices of the City of Indianapolis, he stated:

> or unwritten)," and over broad as to scope and topic areas. Subject to and without waiving these objections, to the best of his knowledge and ability to recall, Defendant Jones states he does not believe he "acted inconsistently" with any of the City of Indianapolis's policies, customs or practices and is not aware of any other Individual Defendant who "acted inconsistently" with the City of

Id. at pg. 8.

Again, nowhere did Defendant Jones divulge that he had memory issues stemming from a 2018 stroke nor capacity issues that would provide a defense that he was incapacitated at the time of the 2022 declaration nor January 2025 interrogatory responses. Id. at 7.

As to affirmative defenses, Defendant Jones did not divulge that he had memory issues stemming from a 2018 stroke nor capacity issues that would provide a defense that he was incapacitated at the time of the 2022 declaration. Id. at 7. When questioned about whether he had personal notes or a personal file, Defendant Jones revealed that "*other than communications with his attorneys for this litigation*, he does not maintain personal notes or personal files relating to the Schoen murder investigation." Id. at pg. 13. (emphasis added). Even though Defendant Jones' counsel conferred with Jones in responding to the interrogatories (as they were required to do), nowhere did Defendant Jones divulge that he had memory issues stemming from a 2018 stroke nor capacity issues that would provide a defense that he was incapacitated at the time of the 2022 declaration nor January 2025 interrogatory responses. Id. at 7.

And critically, Defendant Jones verified the interrogatory responses on January 9, 2025. Id. at 16. It wasn't until mid-September 2025 that Defendant Jones' counsel informed the Court and Plaintiffs' counsel of potential capacity issues. At that point, counsel was in contact with the Defendant Jones family and attempting to engage with treating physicians. Yet, under this timeline – between notice of potential incapacity and the close of discovery on October 31, 2025 – nearly six weeks passed before Jones affirmatively disclosed anyone with any supposed knowledge as to his purported incapacity. Ex. 4, 10/31/25 Disclosures at 4. Critically, no family members of Defendant Jones were identified until October 31, 2025, the last day of discovery:



Ex. 4, 10/31/25 Disc. at 4.

To the extent that defense counsel conferred with Defendant Jones: (1) prior to answering Plaintiffs' complaint (twice) in 2024; (2) prior to completing witness disclosures in 2024; and (3) prior to completing verified interrogatory responses in January 2025, then the untimely disclosure of witnesses and documents is irrelevant and should be barred at trial.

      **B. The Late Disclosure of Witnesses and Medical Records Prejudices Plaintiff and Should be Barred**

As explained below, Plaintiffs suffer serious prejudice from Defendant Jones' late disclosures. Fed. R. Civ. P. 26(a) requires parties to disclose documents and the identities of witnesses it may use to support its defenses. Fed. R. Civ. P. 26(e)(1)(A) requires a party to supplement its disclosure if it learns its initial disclosure is incomplete or incorrect. That "[s]upplementation must be 'timely.'" *Acuity Brands Lighting, Inc. v. Bickley*, No. 5:13-CV-366-DLB-REW, 2015 WL 10551946, at *5 (E.D. Ky. Nov. 30, 2015). "'If a party fails to

provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Id.* "'The advisory committee's note to Rule 37(c) strongly suggests that "harmless" involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Smith v. Pfizer Inc.*, 265 F.R.D. 278, 283 (M.D. Tenn. Feb. 24, 2010) (quoting *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)). The late-disclosing party carries the burden to show harmlessness. *Ellis v. Arrowood Indem. Co.*, No. 12-140-ART, 2015 WL 2061936, *9 (E.D. Ky. Apr. 30, 2015) (explaining that harmlessness means an "honest mistake" by the violating party and "sufficient knowledge" by the wronged party).

Leaving everything to the last minute while knowing about a deadline for seven months can and should have serious consequences. *See Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). "We live in a world of deadlines.... The practice of law is no exception." *Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir.2006). "Lawyers and litigants who decide to play by rules of their own invention will find that the game cannot be won." *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994). *See also Sapia v. Bd. of Educ. of the City of Chicago*, 318 F.Supp.3d 1049, 1052 (N.D. Ill. 2018)("Fact discovery shall close, without extensions of any kind, by February 28, 2019.").

Waiting until the last day of the discovery period to disclose a witness violates a party's discovery obligations. *See Cummings v. Dart,* No. 20 C 3753, 2022 WL 461987, at *1–2 (N.D. Ill. Feb. 15, 2022)(holding that "However, a party cannot also hold back information and supplement at the end of discovery such that it would cause prejudice to the opposing party."; *Sherwin-Williams Co. v. Wooster Brush Co.*, No. 5:12CV3052, 2014 WL 546902, at *3 (N.D. Ohio Feb. 19, 2014) (concluding that withholding disclosure "until near the completion of

12

discovery" contravened discovery obligations); *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460472, at *5 (W.D. Ky. June 29, 2016) (striking untimely disclosures made at the "11th hour," *i.e.*, the close of fact discovery). Indeed, the Seventh Circuit states: "Parties who do not attend diligently to their obligation to supplement initial disclosures proceed at their own peril. Banking on principles of harmless error to excuse negligence is risky business." *Morris v BNSF Railway Co.*, 969 F.3d 753, 766 (7th Cir. 2020).

Here, Defendant Jones has always understood that Plaintiffs' claims centered in large part on his 2022 affidavit. To the extent that he intended to challenge that affidavit, or the hours of recorded interviews that accompany it, his counsel was required to disclose witnesses (and supporting evidence) well in advance of the close of fact discovery. At the very least, in September 2025 when counsel first learned there may be capacity issues for Defendant Jones. Defendant Jones provides no explanation for why that did not occur. Because there is none.

█████████████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████
██████████
██████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████

13



### C. Alternatively, the Untimely Disclosures Regarding a Purported Lack of Capacity in 2022 Should be Barred on Diligence Grounds

Despite objective evidence illustrating otherwise, to the extent that Defendant Jones' had capacity issues throughout the litigation and his counsel did not discovery as much, counsel's lack of diligence in discovering and disclosing this issue over the past few years is inexcusable. It certainly isn't justified.

Defendant Jones' willingness to be interviewed and do a declaration during Plaintiff Benson's exoneration has always been a central issue in this lawsuit since the moment the Complaint was filed. In 2022, nearly a quarter-century after Mr. Schoen's death, a year-long collaborative reinvestigation between the University of San Francisco Racial Justice Clinic (USF RJC) and the Marion County Prosecutor's Office Conviction Integrity Unit (MCPO CIU) uncovered that the IPD withheld critical, exculpatory evidence that implicated another person— Joseph "Looney" Webster as Schoen's true killer. Dckt. 1. As part of that re-investigation, Defendant Jones was interviewed on two occasions by members of the MCPO CIU and the USF RJC. Those interviews resulted in approximately six-hours of audio-recordings with Defendant Jones and a signed declaration where he admits to violating Plaintiff Benson's constitutional rights:

> 8. Similarly, I considered handwritten notes produced by me or other law enforcement officers in the course of the investigation to be work product that I would not have ordinarily turned over to the prosecutor's office. For example, the case file includes a handwritten note from Det. Randy West informing me about potential leads in this case. I considered this note to be work product and did not turn it over to the prosecutor.

Ex. 1, Jones Dec. at 1.

Notably, Defendant Jones signed declaration mirrors the signature Defendants obtained in their verified interrogatory responses:

> I declare under penalty of perjury and the laws of the State of Indiana that the foregoing is true and correct to the best of my knowledge.
>
> 05/11/22                        *Alan F. Jones*
> Date                             Alan Jones

Ex. 1, Jones Dec. at 1.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**ATTESTATION**

I, Alan Jones, affirm under penalty of perjury pursuant to 28 U.S.C. §1746 that the answers made in the attached **Defendant Alan Jones' Answers to Plaintiff Leon Benson's First set of Interrogatories** are true and correct to the best of my knowledge and belief.

Date: 01/09/25                 Signature: *Alan F Jones*
                                              Alan Jones

Ex. 4, Jones Inters at 16.

15

There is no doubt that Defendant Jones – and his counsel – understood that they needed a defense regarding the declaration throughout the pendency of this lawsuit.

Further, while Defendant Jones counsel disavows any knowledge as to Defendant Jones' capacity issues until September 2025, his Answer to Plaintiff's Complaint suggests that some potential memory issues may have occurred with Defendant Jones in December 2024:

> 14. These assertions are not just allegations.
>
> **ANSWER:** Defendant Jones, upon information and belief, denies the allegations in this paragraph.
>
> 15. In May 2022, Det. Alan Jones signed a sworn declaration.
>
> **ANSWER:** Defendant Jones, upon information and belief, admits that his signature appears to be affixed on a May 2022 declaration, but Defendant Jones does not have an independent recollection of signing a sworn declaration, Defendant Jones, upon information and belief, denies that critical exculpatory evidence was never turned over to Mr. Benson or to the Marion County Prosecutor's Office in 1998.
>
> 16. In that declaration, Defendant Jones admits that critical exculpatory evidence was never turned over to Mr. Benson or to the Marion County Prosecutor's Office in 1998.
>
> **ANSWER:** Defendant Jones, upon information and belief, admits that his signature appears to be affixed on a May 2022 declaration, but Defendant Jones does not have an independent recollection of signing a sworn declaration. Defendant Jones, upon information and belief, denies that critical exculpatory evidence was never turned over to Mr. Benson or to the Marion County Prosecutor's Office in 1998.

Dckt. 75 at 4.

There is no excusable explanation (that would support the disclosure of untimely witnesses and documents) for why defense counsel would not investigate the underlying basis for Defendant Jones memory issues in 2024. Nor at the time of answering the Complaint. Nor at the time of the verified interrogatories, should that have occurred. *Morris v BNSF Railway Co.*, 969 F.3d 753, 766 (7th Cir. 2020)("Parties who do not attend diligently to their obligation to supplement initial disclosures proceed at their own peril. Banking on principles of harmless error

16

to excuse negligence is risky business."). Here, Defendant Jones' engagement in risky business should not be rewarded by allowing him to form a new defense – through untimely witnesses and documents – on the last day (and after) of discovery.

## Conclusion

For the reasons stated above, Plaintiffs believe that further inquiry is warranted, or that if a finding is made that it is specific and fixed in time. Plaintiff takes no position as to the specific mode of that inquiry or finding, but suggests that this Court either: (1) hold an evidentiary hearing; or (2) order Defendant Jones to respond to written discovery and/or sit for a deposition; or (3) make a fixed and specific finding that Defendant Jones lost sufficient capacity to participate as of September 2025. Further, Plaintiffs object to Defendant Jones attempts to disclose additional witnesses and documents on the last day of discovery (and after).

Respectfully Submitted,

s/ Elliot Slosar
Elliot Slosar
*One of Plaintiff's Attorneys* Jon Loevy
Elliot Slosar
Kathryn Montenegro LOEVY & LOEVY
311 N. Aberdeen, 3rd Fl
Chicago, IL 60607

Lara Bazelon
Charlie Nelson Keever
BNK Law Group
201 Spear Street, Suite 1100
San Francisco, CA

## CERTIFICATE OF SERVICE

I, Elliot Slosar, an attorney, hereby certify that on November 17, 2025, I filed the foregoing response using the Court's CM/ECF system, which effectuated service on all counsel of record.

/s/ Elliot Slosar
*One of Plaintiffs' Attorneys*