UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEON BENSON, | ) | |
| KOLLEEN BUNCH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00839-JPH-MJD |
| | ) | |
| CITY OF INDIANAPOLIS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS**

Leon Benson was exonerated in 2023 from a 1998 conviction for the murder of Kasey Schoen, after an investigation revealed undisclosed exculpatory evidence. After the exoneration, Mr. Schoen's sister, Kolleen Bunch, unsuccessfully pushed for another suspect identified in the investigation to be held responsible. Mr. Benson and Ms. Bunch then brought this case alleging federal and state-law claims against the City of Indianapolis and police officers who investigated Mr. Schoen's murder. Defendants have filed a motion for partial judgment on the pleadings. Dkt. [45]. For the reasons below, that motion is **GRANTED in part and DENIED in part**.

**I.
Facts and Background**

Because Defendants have moved for dismissal under Rule 12(c), the Court accepts and recites the well-pleaded facts in the complaint as true. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *see Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017).

1

In March 2023, Leon Benson was exonerated from his conviction for the 1998 murder of Kasey Schoen.  Dkt. 1 at 25–28.  In the initial investigation, Indianapolis Police Department detectives Alan Jones and Leslie VanBuskirk had substantial evidence that Joseph "Looney" Webster—rather than Mr. Benson—committed the murder.  *Id.* at 11–13, 16–18, 21–23.  But they failed to investigate that evidence and withheld it from the Marion County Prosecutor's Office and Mr. Benson's counsel.  *Id.*  The State of Indiana prosecuted Mr. Benson for Mr. Schoen's murder, and he was convicted in July 1999.  *Id.* at 23–25.

A reinvestigation beginning in 2021 revealed that Detectives Jones and VanBuskirk failed to disclose exculpatory evidence, including that an eyewitness had identified Mr. Webster as the shooter.  *Id.* at 26.  In a post-conviction proceeding, the State admitted that it "no longer had confidence in the integrity of the conviction" and requested that it be vacated.  *Id.* at 27.  In March 2023, the Marion County Superior Court granted post-conviction relief and vacated the conviction.  *Id.* at 28.

After Mr. Benson's exoneration, Mr. Schoen's sister, Kolleen Bunch, asked the Indianapolis Metropolitan Police Department "to hold the true killer responsible for her brother's death."  *Id.*  But Sergeant Columbus Ricks told Ms. Bunch that he disagreed with Mr. Benson's exoneration.  *Id.* at 28–33.

Mr. Benson and Ms. Bunch brought this case in May 2024 against the City of Indianapolis and five of its officers—including Detectives Jones and

VanBuskirk, and Sergeant Ricks[1]—alleging federal civil-rights and state-law tort claims.  *Id.* at 35–49.  Defendants filed a motion for partial judgment on the pleadings.  Dkt. 45.

## II.
## Rule 12(c) Standard

Defendants may move under Rule 12(c) for judgment on the pleadings after the complaint and answer have been filed by the parties.  "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."  *Gill*, 850 F.3d at 339.  To survive a motion for judgment on the pleadings, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage," *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(c) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations

---

[1] In January 2026, Plaintiffs voluntarily dismissed the other two individual defendants, Steven Garner and Eli McAllister.  Dkt. 181; *see* dkt. 183.  The Court therefore does not address the parties' arguments regarding the claims against them.

merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616. "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

Indiana substantive law governs Plaintiffs' state-law claims. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

Defendants seek judgment on the pleadings on six of Plaintiffs' twelve claims—the federal-law conspiracy to deprive constitutional rights claim and their five state-law tort claims. Dkt. 45 at 1–2; *see* dkt. 1 at 35–49.

### A. Section 1983 Conspiracy to Deprive Constitutional Rights

Mr. Benson[2] alleges that Detectives Jones and VanBuskirk conspired "to deprive Mr. Benson of his constitutional rights and to continuously deprive him of his liberty," and that Sergeant Ricks joined this conspiracy after Mr. Benson's exoneration "to bury evidence of police misconduct" and protect the

---

[2] Ms. Bunch also alleged this conspiracy claim in the complaint, but voluntarily dismissed it with prejudice in response to Defendants' motion. Dkt. 67 at 10 n.2. Ms. Bunch's § 1983 conspiracy claim is therefore **DISMISSED**.

4

City of Indianapolis.  Dkt. 1 at 42–44.  Defendants argue that this claim must be dismissed because it does not allege a private individual's involvement and because the individual defendants are entitled to qualified immunity.  Dkt. 46 at 5, 11.

### 1.  Private Individual's Involvement

Defendants argue that Mr. Benson's § 1983 conspiracy claim must be dismissed because Mr. Benson has not alleged that a private individual conspired with the state-actor Defendants.  Dkt. 46 at 5, 11.  Mr. Benson responds that a § 1983 conspiracy does not require a private individual's involvement.  Dkt. 67 at 17–20.

To prevail on a § 1983 conspiracy claim, a plaintiff "must show an underlying constitutional violation and demonstrate that the defendants agreed to inflict the constitutional harm."  *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018).  There is no requirement in those elements or in § 1983's text that an alleged conspiracy include a private individual.  *See* 42 U.S.C. § 1983 (imposing liability on "[e]very person" who deprives someone's constitutional rights "under color of" state law).  The Seventh Circuit has accordingly assumed that a § 1983 conspiracy claim can proceed when all alleged conspirators are state actors.  *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (affirming jury verdict finding a § 1983 conspiracy among only police defendants); *cf. Daugherty*, 906 F.3d at 612 (dismissing a § 1983 conspiracy among only state actors based on insufficient evidence of an agreement without raising a no-private-conspirator issue).  Mr. Benson

5

therefore is not required to allege the involvement of a private individual to plead a § 1983 conspiracy. *Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1077–78 (N.D. Ill. 2014) (collecting Seventh Circuit authority).

The cases that Defendants rely on do not hold otherwise. The Seventh Circuit has sometimes included the involvement of a private individual in the elements of a § 1983 conspiracy claim, but only when that showing was required because the plaintiff was attempting to hold a private individual liable. *See Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013); *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012); *Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012). That makes sense because private individuals do not ordinarily act "under color of" state law, so they can be liable under § 1983 only if they "jointly engag[ed] with state officials in the prohibited action." *Whitlock*, 682 F.3d at 577. But it would stretch those decisions to find that they apply to conspiracies alleged among only state actors. The Seventh Circuit's more recent opinion in *Green v. Howser* illustrates the distinction. 942 F.3d 772, 778 (7th Cir. 2019) (Barrett, J.). It did not mention a private conspirator when reciting the core elements of a § 1983 conspiracy claim, but later explained that the plaintiff *in that case*—who sought to hold a private individual responsible—"had to show that [ ] a state official and private individual(s) reached an understanding." *Id.*; *accord Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 757–58 (7th Cir. 2024).

Mr. Benson's § 1983 conspiracy claim therefore is not subject to dismissal for not alleging a private individual's involvement.

### 2. Qualified Immunity

The individual Defendants briefly argue that they are entitled to qualified immunity on Mr. Benson's § 1983 conspiracy claim because it was not clearly established that a conspiracy could exist without a private individual's involvement. Dkt. 46 at 11–12. Mr. Benson responds that a dismissal based on qualified immunity would be premature. Dkt. 67 at 20–24.

As explained above, a § 1983 conspiracy claim requires "an underlying constitutional violation" that the defendants agreed to commit together. *Daugherty*, 906 F.3d at 612. Here, however, Defendants do not move to dismiss Mr. Benson's alleged underlying constitutional violations. *See* dkt. 45. That makes it premature to determine, on the pleadings alone, "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013); *see Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (Courts "often cannot tell from a complaint whether qualified immunity applies," so a Rule 12 motion is "rarely" the time to decide qualified immunity.). For example, if an underlying constitutional violation were clearly established, that may affect whether Defendants are entitled to qualified immunity on the § 1983 conspiracy claim. *See Liggins v. City of Chicago*, No. 1:20-cv-4085, 2021 WL 2894167 at *6 (N.D. Ill. July 9, 2021) ("The Court believes what must be clearly established is limited to the *underlying constitutional right* that the Defendants conspired to violate."). That's because "[i]f it is clearly established that the underlying actions were unconstitutional," then any reasonable officer may "understand

that entering an agreement/conspiracy to perform that unconstitutional action is likewise unlawful." *Smith v. City of Chicago*, 785 F. Supp. 3d 356, 399 (N.D. Ill. 2025).

This is therefore a case when "resolution of [the] qualified immunity defense must await factual development." *Beathard v. Lyons*, 129 F.4th 1027, 1035–36 (7th Cir. 2025) (dismissing appeal after the district court reasonably determined that a decision on qualified immunity must be postponed); *see Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). Mr. Benson's § 1983 conspiracy claim therefore is not subject to dismissal based on qualified immunity.

\*     \*     \*

Even so, since the § 1983 conspiracy claim requires an underlying constitutional violation, Mr. Benson can sue each Defendant for that underlying violation. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Boothe*, 66 F. Supp. 3d at 1077–78. That appears to leave his conspiracy claim "superfluous in light of the fact that all named defendants are state actors," and Mr. Benson has not explained why it "add[s] anything except needless complexity." *Turley v. Rednour*, 729 F.3d 645, 649, 649 n.2 (7th Cir. 2013) (addressing 42 U.S.C. § 1985(3)); *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) ("Conspiracy matters only with respect to [private individuals, because] the other defendants are state actors, and thus amenable to suit under 42 U.S.C. § 1983."). "Nevertheless, there is no rule preventing a plaintiff

8

from alleging multiple legal theories as bases for recovering on a single injury, particularly at the pleading stage," so this claim's superfluousness can be addressed later if necessary. *Boothe*, 66 F. Supp. 3d at 1077–78.

Defendants' motion for judgment on the pleadings is **DENIED** as to Mr. Benson's § 1983 conspiracy claim.

### B. State-Law Claims against Individual Defendants[3]

Plaintiffs' remaining state-law claims are against Detectives Jones and VanBuskirk, and Sergeant Ricks. Dkt. 67 at 11 n.3; dkt. 158 (Plaintiffs' statement of claims).

### 1. Indiana Tort Claims Act ("ITCA") Immunity

### a. Scope-of-Employment Immunity

Under the Indiana Tort Claims Act, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). Defendants argue that they are entitled to immunity on Plaintiffs' state-law claims under this provision. Dkt. 46 at 18–20. Plaintiffs admit that they are suing Defendants "for actions taken during the scope of their employment." Dkt. 67 at 42. They nevertheless argue that their state-law claims can proceed

---

[3] Mr. Benson also alleges that the City of Indianapolis negligently supervised its employees in their criminal investigation, resulting in violations of Mr. Benson's rights. Dkt. 1 at 45. In response to the motion for judgment on the pleadings, Mr. Benson concedes that the City of Indianapolis is immune from liability under the Indiana Tort Claims Act. Dkt. 67 at 11 n.3. This claim is therefore **DISMISSED**. *Id.*

because ITCA provides an exception to scope-of-employment immunity in

Indiana Code § 34-13-3-5(c):

> A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
>   (1) criminal;
>   (2) clearly outside the scope of the employee's employment;
>   (3) malicious;
>   (4) willful and wanton; or
>   (5) calculated to benefit the employee personally.

*Id.* at 42–43 (relying on § 34-13-3-5(c)(3) and (c)(4)).

The Indiana Supreme Court and Seventh Circuit have explained, however, that § 34-13-3-5(c) does not overcome ITCA's grant of immunity when the complaint "alleges that the employee's acts leading to the claim occurred within the scope of employment."  *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003) (holding that defendant's showing "that he was acting within the scope of employment" was "dispositive of the Bushongs' claim for relief"); *see Ball*, 760 F.3d at 644–45 ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment.").

Plaintiffs nevertheless rely on two district court opinions reaching the opposite conclusion.  Dkt. 67 at 40–42 (citing *Biddle v. Cushingberry*, No. 1:21-cv-2660, 2024 WL 1050434 (S.D. Ind. Mar. 11, 2024); *Becker v. City of Evansville*, No. 3:12-cv-182-WGH-TWP, 2015 WL 328895 (S.D. Ind. Jan. 26, 2015).  But after those decisions, the Indiana Supreme Court reiterated that "a

plaintiff cannot sue a government employee personally when, like here, the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment." *Ind. Land Tr. #3082 v. Hammond Redev. Comm'n*, 274 N.E.3d 437, 443 (Ind. 2026) (holding that, because individual defendants acted in the scope of their employment, they were "as a matter of law . . . immune from liability under [Indiana] Code section 34-13-3-5."); *accord Drogosz v. Ball*, 243 N.E.3d 1092 (Ind. Ct. App. 2024) ("When a plaintiff suffers damages allegedly caused by the actions of a government employee acting *within* the scope of their employment . . . the plaintiff may proceed only against the instrumentality of government that employed them.").

Because Plaintiffs admit that Defendants were acting within the scope of their employment, ITCA entitles them to immunity.

### b. Law Enforcement Immunity[4]

The Indiana Tort Claims Act makes government employees acting in the scope of their employment immune from liability for "a loss result[ing] from . . . [t]he adoption and enforcement of or failure to adopt or enforce . . . a law." Ind. Code § 34-13-3-3(a)(8); *accord Doe v. Gray*, 75 F.4th 710, 721 (7th Cir. 2023).[5] Defendants argue that they are also entitled to immunity on Plaintiffs' state-law

---

[4] While Plaintiffs' state-law claims are dismissed under ITCA's scope-of-employment immunity, the Court addresses law enforcement immunity as well.

[5] The statute excludes actions that constitute false arrest or false imprisonment from this immunity, Ind. Code § 34-13-3-3(a)(8), but that carveout does not apply to Plaintiffs' state-law claims, *see* dkt. 158; *Doe*, 75 F.4th at 721.

claims under this provision.  Dkt. 46 at 18–20.  Plaintiffs do not contest that Defendants were acting as police officers "attempting to investigate a crime" and do not dispute that their actions fall within the scope of what ITCA's law enforcement immunity protects.  *See* dkt. 67 at 38–43.[6]  Instead, Plaintiffs argue that Indiana Code § 34-13-3-5(c) provides an exception to law enforcement immunity as well as scope-of-employment immunity.  *Id.* at 42–43 (relying on § 34-13-3-5(c)(3) and (c)(4)).

Indiana Code § 34-13-3-5(c) gives no indication that it overcomes ITCA's grants of immunity in other code sections, including law enforcement immunity in § 34-13-3-3.  *See Ball*, 760 F.3d at 644–45 (describing Ind. Code § 34-13-3-5(c) as a pleading standard that may not apply in federal court under Federal Rule of Civil Procedure 8(a)).  And Indiana caselaw indicates that § 34-13-3-5(c) cannot overcome § 34-13-3-3's "separate grant[s] of immunity."  *Waldrip v. Waldrip,* 976 N.E.2d 1092, 116 (Ind. Ct. App. 2012) ("Even if the complaint clearly alleged that Angela was acting for her own benefit . . . negating immunity under Indiana Code § 34-13-3-5(c)(5), we must still address the separate grant of immunity under Code § 34-13-3-3(6)."); *see also Ind. Land Tr. #3082*, 274 N.E.3d at 443–44.

---

[6] Any argument that Defendants' actions are outside the scope of ITCA's law enforcement immunity is therefore waived.  *See F.D. v. Ind. Dept. of Child Servs.*, 1 N.E.3d 131, 138–39 (Ind. 2013) (Ind. Code § 34-13-3-3(a)(8) "plainly grants immunity from suit where the loss results from" "deficiencies in [an] investigation and pursuit of . . . charges."); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Jones' claim of immunity under the Indiana Tort Claims Act has gone unanswered.  On this basis, we find that the state tort claims against Jones were properly dismissed."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver.").

Defendants are therefore also entitled to law enforcement immunity under ITCA, so Plaintiffs' state-law claims are **DISMISSED**.[7]

### 2. Mr. Benson's Indiana Tort Claims Act Notice[8]

"One of ITCA's requirements is to give notice of tort claims to the defendant's government body . . . within 180 days after the alleged losses occur." *Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 648–49 (7th Cir. 2006) (explaining Ind. Code § 34-13-3-8(a)).  The parties first dispute whether Mr. Benson's ITCA notice can be considered for Defendants' motion for judgment on the pleadings.  Dkt. 46 at 12–15; dkt. 67 at 26–38.

Defendants raised the timeliness and sufficiency of Mr. Benson's ITCA notice in their answers to the complaint and attached the notice to their motion for judgment on the pleadings.  Dkt. 73 at 70; dkt. 75 at 70; dkt. 45-1.  The notice therefore may be considered for Defendants' motion for judgment on the pleadings.  *See Federated Mut. Ins. Co. v. Coyle Mech. Supply*, 983 F.3d 307, 312–13 (7th Cir. 2020); *Brownmark Films, LLC v. Comedy Partners*, 682 F.2d 687, 690 (7th Cir. 2012) (Documents referred to in a pleading that "are central to" a claim or affirmative defense may be considered if attached to a pleading or provided with a Rule 12 motion).

---

[7] The Court therefore does not address whether ITCA's discretionary function immunity applies.

[8] While Plaintiffs' state-law claims are dismissed under ITCA's immunity provisions, the Court also addresses Mr. Benson's ITCA notice.  The Court does not address the timeliness or sufficiency of Ms. Bunch's ITCA notice.

"Compliance with the notice provisions of the ITCA is a procedural precedent which the plaintiff must prove." *Brown v. Alexander*, 876 N.E.2d 376, 383 (Ind. Ct. App. 2007). "Judgment on the pleadings is appropriate when there are no issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). The Court must apply Indiana law by doing its best to predict how the Indiana Supreme Court would rule on the issues of law. *Mashallah*, 20 F.4th at 319.

### a.  Sufficiency of Mr. Benson's Defamation Claim Notice

Defendants argue that Mr. Benson's defamation claim must be dismissed because his ITCA notice did not provide Sergeant Ricks with substantive notice of the claim. Dkt. 46 at 14–15. Mr. Benson responds that his ITCA notice was sufficient because Sergeants Ricks became involved only after Mr. Benson's exoneration, allowing him to discern that Mr. Benson was providing notice of a post-exoneration defamation claim against him. Dkt. 67 at 37–38.

The purpose of an ITCA notice is to inform the relevant government officials about the facts surrounding the claim "so that the political subdivision may investigate, determine its possible liability, and prepare a defense to the claim." *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013). "Substantial compliance with the statutory notice requirements is sufficient" if that purpose is satisfied. *Id.* "The crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it." *Id.*

14

Mr. Benson's ITCA notice named Sergeant Ricks as one of several defendants, but it did not specify any of his conduct or any claims against him. Dkt. 45-1.  In fact, it does not describe any post-exoneration conduct or related claims, instead providing "notice of tort claims arising from Mr. Benson's *wrongful prosecution, conviction, and incarceration.*"  *Id.* at 2 (emphasis added). And when the notice briefly mentioned defamation, it did so in the context of his pre-exoneration injuries and claims:

> As a result of Mr. Benson's wrongful arrest, prosecution, conviction, and imprisonment, Mr. Benson spent nearly 25 years wrongfully incarcerated in jail and in the Indiana Department of Corrections, and suffered damages including, but not limited to, loss of liberty, mental trauma, and emotional distress.
>
> Mr. Benson maintains state law tort claims, as well as federal constitutional claims, against the Defendants.  Those claims include, but are not limited to, malicious prosecution, negligent retention and supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, supervisory liability, *respondeat superior*, defamation, as well as federal claims for violations of Mr. Benson's due process right to a fair trial.

*Id.* at 12.

The notice's brief and disconnected references to Sergeant Ricks and defamation—in the context of pre-exoneration claims—did not give notice of "the full nature" of a defamation claim against Sergeant Ricks for post-exoneration conduct.  *Schoettmer*, 992 N.E.2d at 707.  For example, in *Chang v. Purdue University*, the plaintiff sent a pre-suit demand letter informing defendants "that Chang had authorized her counsel to file a lawsuit on her behalf, and [setting] forth a list of Chang's demands."  985 N.E.2d 35, 53 (Ind. Ct. App. 2013).  The Indiana Court of Appeals held that the letter did not comply with ITCA's notice requirement because it "did not include any information" about "the circumstances that brought about the loss," or "the

time and place the loss occurred."  *Id.*  The same is true here for Mr. Benson's notice regarding his post-exoneration defamation claim against Sergeant Ricks. *See id*; *accord Gutierrez v. City of Indianapolis*, 886 F. Supp. 2d 984, 1000 (S.D. Ind. 2012).

It would not change this analysis even if Defendants knew that Sergeant Ricks was involved in the investigation only after Mr. Benson's exoneration. *See* dkt. 67 at 37.  In *Chang*, it did not matter that the defendants "were by then familiar with the situation and already knew all of [the] information" missing from the notice.  985 N.E.2d at 53.  That's because the plaintiff must provide notice of the tort claim he or she intends to bring—without that notice, the defendants cannot "determine its possible liability[ ] and prepare a defense to the claim."  *See id.* at 52–53; *Schoettmer*, 992 N.E.2d at 707 (The "crucial consideration" is that the notice must inform defendants of the plaintiff's intended claims); *Town of Cicero v. Sethi*, 189 N.E.3d 194, 210 (Ind. Ct. App. 2022).

Finally, Mr. Benson briefly argues that his notice was sufficient because it was submitted simultaneously to Ms. Bunch's ITCA notice, which specified Sergeant Ricks's allegedly defamatory statements in relation to her intentional infliction of emotional distress claim.  Dkt. 67 at 38.  But nothing in ITCA allows a plaintiff to rely on facts in a different plaintiff's notice regarding a different state-law claim.  *See Chang*, 985 N.E.2d at 53.  If anything, this pushes in the opposite direction because Mr. Benson omitted a post-

exoneration defamation claim even as his counsel showed in Ms. Bunch's notice that they knew how to include the relevant facts.

Mr. Benson's state-law defamation claim is therefore **DISMISSED**.[9]

### b. Timeliness for Remaining State-Law Claims

For his state-law claims other than defamation, Mr. Benson does not contest that his ITCA notice was "49 days tardy." Dkt. 67 at 35–36. He argues, however, that it "should be treated as timely" because he "substantially complied with the timing requirement." *Id.* Defendants contend that Indiana law requires strict compliance with ITCA's requirement that notice be provided within 180 days of the loss. Dkt. 89 at 10–11.

"[S]ubstantial compliance cannot exist when the claimant took no steps whatsoever to comply with the notice statute . . . within 180 days." *Lyons v. Richmond Comm. Sch. Corp.*, 19 N.E.3d 254, 260 (Ind. 2014). So ITCA's 180-day clock cannot be extended by "substantial compliance" with the timing requirement. *Quarles v. Merrillville Comm. Sch. Corp.*, No. 2:16-cv-467, 2017 WL 6555445 at *3 (N.D. Ind. Dec. 22, 2017) (explaining that, under *Lyons*, substantial compliance "does not apply to cases where the plaintiff failed to provide the statutory notice within the 180 day period"). Instead, the substantial compliance doctrine is limited to whether a notice "complies with the *content* requirements of the ITCA." *Mitchell v. Town of Whitestown*, No.

---

[9] The Court therefore does not address whether Mr. Benson's ITCA notice was timely as to the defamation claim.

1:21-cv-1935-JPH-MG, 2022 WL 3369253 at *3 (S.D. Ind. Aug. 16, 2022) (quoting *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989)).

Mr. Benson's state-law claims other than his defamation claim are therefore **DISMISSED** as untimely.

### C. *Respondeat Superior*

Mr. Benson alleges that the "City of Indianapolis is liable as principal for all state law torts committed by its agents." Dkt. 1 at 46. Defendants argue that *respondeat superior* is not a standalone claim, so this allegation should be dismissed because Mr. Benson's state-law claims must be dismissed. Dkt. 46 at 22. Mr. Benson responds only that "the state-law claims must survive," and that the *respondeat superior* doctrine holds the employer liable for the employee's actions on those claims. Dkt. 67 at 43.

Since all state-law claims are dismissed, the *respondeat superior* allegations are similarly **DISMISSED**.

### IV.
### Conclusion

Defendants' motion for partial judgment on the pleadings is **GRANTED in part and DENIED in part**. Dkt. [45]. The motion is denied as to Mr. Benson's § 1983 conspiracy claim, granted as to Ms. Bunch's § 1983 conspiracy claim, and granted as to all of Plaintiffs' state-law claims. The **Clerk is directed** to terminate Ms. Bunch as a plaintiff.

The dispositive motion deadline is **RESET to June 22, 2026**. *See* dkt. 154.

**SO ORDERED.**

Date: 3/23/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel